(124 So. 137)

No. 29639.

**FITZENREITER et al. v. FEAGIN.**

June 17, 1929.   Rehearing Denied Oct. 8, 1929.

Williams & Williams, of Lake Charles, for appellant.

Robert R. Stone, of Lake Charles, for appellee.

THOMPSON, J. The daughter and one son, issue of the first marriage of Henry N. Feagin, deceased, brought this suit against another son of the first marriage, to have certain property appearing on the public records in the name of the defendant decreed to belong to the estate of the deceased, and to have the defendant account for and collate certain moneys received by him from his father as well as the proceeds of certain Liberty bonds sold by him.

The widow of deceased by a second marriage joined in the suit, asserting an interest in the property of the second community.

There appeared to be no property of the second marriage; hence the widow was dismissed and is not now before this court.

There were four pieces of real estate standing upon the public records in the name of defendant. One of these the plaintiffs claim belongs to the estate and should be divided equally between the heirs. The other three realty properties, it is admitted by the plaintiffs, were owned in common by their father and the defendant in equal proportions, and it is claimed that their father's half should likewise be divided equally.

The plaintiffs also demand that the defendant account to the estate for one-half of certain moneys advanced by their father to the partnership of which it is claimed the defendant was a member.

The other demand against the defendant is for the proceeds of Liberty bonds belonging to the estate amounting to $8,000.

The defendant contends that all of the real estate was given to him and placed in his name by his father to remunerate and compensate so far as possible for services and support which he had given the family, and which amounted in value to many times more than the total value of everything received by him from his father.

With reference to the bonds, the defendant admits that he sold two of them for $2,106, which was used in paying a note for $1,500 signed by his father, and that he turned over the balance of said two bonds to his father together with all of the other bonds.

That thereafter his father gave him the bonds in part payment of services rendered to him and of support given his father and family.

The trial judge held that one of the properties, the home place, belonged to the estate, and that the other three properties, the Kingsbury, the Hotel, and Zadie Thompson lot, were owned by the estate and by the defendant in the proportion of one-half each.

Our examination of the record satisfies us, as it did the district judge, that there was a business relation or working agreement between the father and son akin to a partnership, if not in fact one, and that the three properties, though taken in the name of the son and paid for by the father, became common property between them. The evidence

in our opinion falls far short of proving that the whole of these properties were donated to the defendant in payment of services rendered or otherwise. It is an established fact, however, that the father gave to the defendant a one-half interest in the three properties in consideration of the son's attention and labor in behalf of his father's business. This is admitted in paragraph 8 of the plaintiff's petition and repeated in paragraph 10 of the petition, in which it is alleged that the son had given his time and assistance in running the business of the father in which he had a working interest, and that petitioners were informed and believed, and so alleged, that one-half interest in said property belonged to the defendant.

And more than this, the plaintiffs in their prayer ask that all of the real property be decreed to belong one half to the estate and the other half to defendant, except the 29-acre tract.

In view of these facts, we are unable to agree with the judge below that the defendant should account to the estate for one-half of the purchase price of the three properties. The one-half of the purchase price of the three properties amounts to $1,451, and if the defendant has to account therefor, he will be paying cash for his one-half of the property and obtain nothing for his labor and attention to his father's business in consideration of which his father gave him the one-half interest as alleged by the plaintiffs and admitted in their petition.

■ It is shown that the defendant's father advanced the money to build a breakwater in front of property which was held to be owned in common by defendant and his father. As this advance was for the benefit of the common property, the defendant was properly held to account for one-half thereof. The amount he was held to pay is $614.06.

There were certain other amounts advanced by the father for the benefit of the partnership the one-half of which, $1,013.47, the judge held the defendant should account for. Under the evidence we find no error in the ruling.

The evidence shows that Henry N. Feagin had $8,000 in Liberty bonds deposited in a bank at Lake Charles. The defendant admits that he obtained possession of these bonds under the direction of his father. He disposed of two of the bonds for $2,084.08 and paid a note of $1,500, which he claims was signed by John B. Feagin & Co., by John B. Feagin and by Henry N. Feagin, and which note defendant alleges was for money borrowed to pay medical expenses of his father and for living expenses of the family. The balance of the two bonds, $584.08, the defendant claims that he turned over to his father.

If this allegation was true, and there was no evidence to the contrary, then it could not be said to be the individual debt of defendant and he could not be held to account for the $1,500.

However, in the same connection the defendant alleges that the note was made by him individually and that his father, in directing that it be paid, directed that the amount so paid should be and in fact was a part of the remunerative donation. That his said father merely suggested and directed that the note be paid, as it was a moral obligation on the part of himself.

If the note was the father's debt and was paid by the father's money as first alleged, then there was no necessity or reason for making of a remunerative donation as alleged. The claims are inconsistent, and we are forced to the conclusion reached by the judge; that is, that the debt was the defendant's debt and that he owes the return of the amount to the estate.

■ The evidence does not convince us of the verity of the claim that the Liberty bonds were given to the defendant as either a remunerative or an onerous donation. The defendant testified that he gave the bonds to his father together with the balance in cash from the two bonds sold, and that a few days thereafter his father gave him the bonds and said:

"Buddie, you have looked after me. This is all we have left here is these bonds. You have looked after me and the only one who did. You are the only one that I have got any confidence in. You have looked after me in every way in the world and took care of me. I expect you to take care of me the balance of my days. Here are these bonds. I want you to have them. Here they are. You have broke yourself down looking after me. He said this will take care of us till we get better. If anything is left it is yours."

Here again the defendant went just a little too far and said just a little too much. The last part of his statement is destructive of any intent on the part of the father to give the bonds in compensation for past services or in consideration of future services. The most that can be said of the conversation is that the bonds should be used, if necessary, to take care of the two till they, "we get better," then if anything is left, it was to become the son's. It is very clear that the father did not intend to make a present and irrevocable gift of said bonds to his son either for past or future services.

And this is confirmed by the statement made by the father to Mrs. Miller, a relative of defendant by marriage, about a month before he died. Mrs. Miller testified that Henry N. Feagin told her that he had about $4,000 worth of those bonds left; that he said there were some debts; and that he told

John after he paid the debts the rest of that was to take care of him as long as he lived, and at his death he was to have the rest of it.

We approve the ruling of the trial judge in requiring the defendant to account to the estate for all of the bonds.

■ The defendant claims that he spent more than $1,500 for expenses of last illness and burial of his father, and he prays that he should be repaid this amount in the event that the alleged donations to him were annulled.

The trial judge held that he was not entitled to credit for such expenses, because in opposing the administration of the estate he swore there were no debts and that he made a present to the succession of all debts he paid for his father and would not urge them even if he was forced to account for the bonds in full.

We find ourselves unable to concur in this ruling. The guaranty of the defendant was predicated on the fact that he had a valid donation of the several properties in contest, and he very reasonably felt that no administration under the circumstances was necessary and that he should bear the charges of last illness, etc., rather than that the other heirs should be burdened with payment of any part thereof. His position at that time could not operate as an estoppel from claiming the amount in the event the donations were not sustained.

The difficulty in the way of allowing the defendant credit is that the evidence fails to establish with any degree of certainty the amount paid.

The defendant testifies that he paid sanitarium, hospital, funeral, and undertaker's bills; but we fail to find in the 390 pages of testimony any statement as to the amount of

such bills. The claim will have to be left open for future settlement in the partition proceedings.

A further claim made by the defendant is that Robert Feagin should account to the succession in the sum of $3,500, being the value of 20 acres of land donated to him by his father.

The matter arose in this way: The grandmother of Robert wanted to donate the 20 acres to Robert's father, and the father in turn desired to make a donation of the same land to Robert when he became of age. The deed was made direct from the grandmother to Robert, but was given to Robert's father to keep until Robert became of age, which was in 1926. The deed was executed in 1915, at which time the land was worth $200.

The district judge held that Robert did not know of the donation until he reached his majority and began to pay taxes on the land, and that the acceptance related back to the time when Robert's father took the donation for him, and that he should account for the value as of that date, which as stated was $200. We fail to discover any error in this ruling.

With the exceptions we have noted, the judgment of the court below apears to have been in accordance with the evidence and is fair and just between the parties.

The judgment appealed from is amended by deducting, from the amount the defendant is condemned to pay, the sum of $1,451, which the judgment allowed as the price of defendant's half of the three pieces of real estate; that the right of defendant to claim payment for funeral and expenses of last illness be reserved for future determination; and that in all other respects said judgment is affirmed. The appellees to pay cost of this appeal.